# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYON D. LIVELY,<br><br>                         Plaintiff,<br>  vs.<br><br>ROBERT TOVAR, et al.,<br>                        Defendants. | CASE NO. 11cv153-LAB (MDD)<br><br>REPORT AND RECOMMENDATION RE DEFENDANT'S MOTION TO DISMISS<br>[Doc. No. 16] |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.

**I.    Procedural History**

On January 1, 2011, Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights lawsuit under 42 U.S.C. § 1983. (Doc. No. 1). In his Complaint, Plaintiff alleges that his Eighth Amendment rights were violated when he was denied proper medical care by prison medical staff. Id. Of the ten Defendants named in Plaintiff's Complaint, nine filed an Answer on September 12, 2011 (Doc. No. 17). Defendant Afshid Nahavandi instead filed the instant Motion to Dismiss on August 18, 2011. (Doc No. 16).

On October 21, 2011, Plaintiff filed an Opposition to Defendant's Motion. (Doc. No. 30). On February 13, 2012, Defendant filed a Reply to Plaintiff's Opposition. (Doc. No. 34).

///

## II. Statement of the Facts

The facts are taken from Plaintiff's Complaint and are not to be construed as findings of fact by the court.

On or about September 19, 2008, Plaintiff was involved in a fight with Darryl Milbray, a fellow inmate, in the prison yard. (Doc. No. 1 at 9). An alarm was sounded and the inmates in the yard were told to lay down. Id. Plaintiff stopped fighting and complied with the order, but Milbray continued to attack him. Id. Officer Escribano intervened and pepper sprayed both Plaintiff and Milbray. Id. at 10. Officer Alvarado arrived and also pepper sprayed Plaintiff and Milbray. Id. Officer Tovar arrived and threw a "(flash bang) pepper spray grenade" at Plaintiff. Id. The grenade exploded directly in Plaintiff's face, incapacitating both Plaintiff and Milbray. Id. Officer Trujillo and Lieutenant Abbott were also in the yard and observed the incident. Id.

Even though Plaintiff was on the ground, Tovar ran at Plaintiff at "linebacker speed" and jumped directly onto Plaintiff's back. Id. Plaintiff yelled at Tovar to stop, but Tovar continued to apply pressure to Plaintiff's back with his knees, even after securing Plaintiff in handcuffs. Id. at 11-12. Tovar then rolled Plaintiff onto his side, and forcefully searched Plaintiff for weapons. Id. at 12. During the search, Plaintiff felt severe pain in his shoulder, which Plaintiff believed to be a rip or tear. Id. Despite Plaintiff's protests, Tovar continued to hold Plaintiff on the ground for thirty minutes while the yard was searched. Id.

Plaintiff was then escorted out of the yard by Tovar and Alvarado. Id. They ran water over Plaintiff's face for two minutes to wash out the pepper spray, placed him in a holding cell, and performed a strip search. Id. Plaintiff requested a doctor because of the pain in his shoulder, back, and knees, but his requests were ignored. Id. An hour later, officers arrived to photograph Plaintiff's injuries and file a written report regarding Plaintiff's injuries. Id. During the evaluation, Plaintiff again complained of pain and asked for doctor, but officers again refused his request. Id. The officers also refused to document all of Plaintiff's injuries, or to provide him with any medication. Id. Plaintiff contends that he suffered a rotator cuff tear in his left shoulder, nerve damage, chronic back pain with degenerative disc disease, knee abrasions, partial numbness in the left shoulder and back, and tendon damage. Id. at 20-21.

On September 22, 2008, Plaintiff was examined by Dr. Ko. Id. at 21. During the examination, Plaintiff complained of shoulder and back pain. Id. Plaintiff also complained of burns he suffered when he was pressed against the hot ground by Tovar. Id. Ko referred Plaintiff to a Dr. Johnson, a radiologist, for x-rays. Id. at 22. Dr. Johnson performed the x-rays and found no broken bones, no abnormalities, and no tissue deformities in Plaintiff's shoulder. Id.

Plaintiff was dissatisfied with the results of the x-ray, and requested that he be referred for an M.R.I. "because he felt something was ripped and torn severely in his left shoulder area." Id. Dr. Ko disagreed that Plaintiff's shoulder was torn, and diagnosed Plaintiff with inflammation and tenderness in the shoulder. Id. at 23. Dr. Ko refused Plaintff's repeated requests for an M.R.I., and instead prescribed an arm-sling and a ten day supply of minor pain medication. Id. Dr. Ko also scheduled a follow-up exam for the next week. Id.

Over the next few weeks, Plaintiff's shoulder was examined by Nurse Cheletta and Nurse Practitioner Correno. Id. at 24-25. Plaintiff repeated his complaints of pain and his request for an M.R.I. referral, but no M.R.I was ordered. Id. Plaintiff also requested stronger pain medication, but that request was denied as well. Id. at 25. During a November 17, 2008 exam, Nurse Practitioner Correno remarked that Plaintiff still seemed to be in a lot of pain. Correno told Plaintiff that he would be referred for an M.R.I. immediately, but the M.R.I. was never performed. Id.

On December 8, 2008, Plaintiff was seen by Defendant Dr. Nahavandi regarding his shoulder pain. Id. at 28. During the exam, Plaintiff informed Nahavandi that he had been suffering severe pain since the September 19, 2008 incident. Plaintiff asked that he be referred for an M.R.I. immediately based on his shoulder pain and difficulty using his left shoulder. Id. Defendant Nahavandi noted Plaintiff's complaints of pain, the treatment notes indicating Plaintiff's ongoing pain, and Plaintiff's decreased range of motion in the left shoulder, but found that an M.R.I. was unnecessary. Id. at 29. Nahavandi concluded that Plaintiff's pain was mostly "bicipital tendinitis," and speculated that Plaintiff may only need a bursal injection. Nahavandi referred Plaintiff to an orthopedic specialist for further evaluation. Id. Nahavandi also prescribed pain medication, though Plaintiff argued that stronger pain medication was necessary. This exam

was Dr. Nahavandi's only interaction with Plaintiff.

### III. Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the ...claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal citations omitted). Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell v. Twombly, 550 U.S. 544, 555-56 (2007). Thus, while specific detail is not required, every complaint must, at a minimum, plead "enough facts to state a claim for relief that is plausible on its face." Id. at 547; Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1066 (9th Cir. 2008).

The court must assume the truth of the facts which are presented and construe all inferences from them in the light most favorable to the non-moving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). A *pro se* party's pleadings should be construed liberally. Id. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell, 127 550 U.S. at 555. Thus, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (internal citation omitted). Furthermore, the court may not "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

### IV. Discussion

In his Motion, Defendant Nahavandi moves to dismiss Plaintiff's Eighth Amendment claim that he was deliberately indifferent to Plaintiff's medical needs. (Doc. No. 16 at 6). Defendant contends that Plaintiff's claim fails because Nahavandi actually treated Plaintiff's shoulder. In his

1  Opposition, Plaintiff states that the treatment was inadequate and that his injuries were so serious
2  that they required more immediate treatment. (Doc. No. 30).  Defendant counters that Plaintiff's
3  allegations amount, at most, to mere negligence by Nahavandi, and not deliberate indifference. Id.
4  at 8.

5  "[W]hen the State takes a person into its custody and holds him there against his will, the
6  Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and
7  general well-being." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189,
8  199-200 (1989).  Medical care is one of the responsibilities placed on the State, because a prisoner
9  "must rely on prison authorities to treat his medical needs." Estelle v. Gamble, 429 U.S. 97, 103
10 (1976).  A prison official violates the Eighth Amendment when he/she acts with deliberate
11 indifference to a prisoner's serious medical needs. Id. at 104-105.  Thus, for a prisoner to
12 demonstrate an Eighth Amendment violation two components must be satisfied. See Wilson v.
13 Seiter, 501 U.S. 294, 298 (1991).  The plaintiff must allege that he/she (1) suffered an objectively
14 serious medical need and (2) that the defendant was deliberately indifferent to this need. Id.

15     **1.    Serious Medical Need**

16 The objective component of an Eighth Amendment violation requires the showing of a
17 serious medical need. Id.  A serious medical need is demonstrated by a showing that the "failure
18 to treat a prisoner's condition could result in further significant injury or the unnecessary and
19 wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citation
20 omitted).  "The existence of an injury that a reasonable doctor or patient would find important and
21 worthy of comment or treatment; the presence of a medical condition that significantly affects an
22 individual's daily activities; or the existence of chronic and substantial pain" are indications that a
23 prisoner has a serious need for medical treatment. McGuckin v. Smith, 974 F.2d 1050, 1059-1060
24 (9th Cir.1992) (overruled on other grounds by WMX Techs. v. Miller, 104 F.2d 1133, 1136 (9th
25 Cir.1997) (en banc)).

26 Here, Plaintiff has shown an objectively serious medical need.  Plaintiff's injuries were
27 serious enough that Defendant Nahavandi recommended Plaintiff to a specialist for further
28 treatment, prescribed pain medication and other drugs, and ordered additional treatment. (Doc.

1 No. 16 at 8). Defendant does not appear to challenge Plaintiff's claim on this prong. Accordingly, Plaintiff has satisfied the objective prong of his Eighth Amendment claim. Wilson v. Seiter, 501 U.S. at 298. The Court must proceed to the second prong of the analysis and determine whether Plaintiff has alleged that Defendant Nahavandi was deliberately indifferent to Plaintiff's medical need. Id.

### 2. Deliberate Indifference

The subjective component of an Eighth Amendment claim requires that the prison official acted with deliberate indifference to the plaintiff's serious medical need. See Wilson, 501 U.S. at 298. A prison official acts with deliberate indifference when he/she denies, delays or interferes with the treatment of the serious medical needs of a prisoner. Estelle, 429 U.S. at 104-5. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id.

"[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. The indifference to medical needs must be substantial; mere malpractice, or even gross negligence, does not constitute cruel and unusual punishment. Id.

Here, Defendant contends that Nahavandi was not deliberately indifferent because he acknowledged Plaintiff's injuries and ordered appropriate treatment. (Doc. No. 16 at 8). In his Opposition, Plaintiff counters that his injuries demanded immediate treatment. (Doc. No. 30).

The Court agrees that Plaintiff has not sufficiently alleged that Nahavandi was deliberately indifferent. According to Plaintiff's own statement of the facts, he only saw Nahavandi at the December 8, 2008 exam, roughly four months after the incident in the yard. (Doc. No. 1 at 28). Plaintiff does not allege that Nahavandi had any part in the September 19, 2008 incident, or that Nahavandi was aware of Plaintiff's medical condition at any point before the exam. At the exam, Nahavandi acknowledged Plaintiff's complaints of pain, and referred Plaintiff to a specialist for

further treatment. Id.  Plaintiff does not allege any facts that tends to show Nahavandi denied, delayed, or interfered with his medical care. Estelle, 429 U.S. at 104-5.  According to Plaintiff's own statements, Nahavandi ordered more comprehensive treatment than what was recommended by any the medical professionals that had previously treated Plaintiff.

Rather than argue that Nahavandi denied him treatment, Plaintiff instead argues that Nahavandi's recommended treatment was inadequate.  (Doc. No. 30).  Plaintiff contends that his pain was severe and thus strong pain medication and an immediate M.R.I. were necessary.  Even if Plaintiff's self-diagnosis were correct, this would not amount to deliberate indifference. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  At most, Plaintiff has alleged that Nahavandi was negligent in making his diagnosis and recommendation, but even this still does not amount to a constitutional violation. Estelle, 429 U.S. at 106.  Accordingly, Plaintiff has failed to meet the subjective prong of his Eighth Amendment claim.  The Court **RECOMMENDS** that Defendant's Motion be **GRANTED** and Plaintiff's claim against Dr. Nahavandi be **DISMISSED**.

### 3. Leave to Amend

Defendant also contends that Plaintiff should not be given leave to amend his claim.  (Doc. No. 16 at 9).  Defendant asserts that Plaintiff has provided a detailed accounting of the facts, and that by Plaintiff's own admission, he was only seen by Nahavandi on one occasion. Id.  In that single encounter, Nahavandi acknowledged Plaintiff's injuries and recommended further treatment. Id.  Defendant contends that leave to amend should be denied as these well-established facts defeat Plaintiff's claim against Nahavandi. Id.

"A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988)(internal citations omitted). "Liberality in granting a plaintiff leave to amend 'is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." Bowles v. Reade, 198 F.3d 752, 757 (9th Cir. 1999).

The Court agrees that leave to amend should be denied. Plaintiff's Complaint and the attached exhibits establish that Nahavandi examined Plaintiff and recommended further treatment. (Doc. No. 1, Exs. A, B). Consequently, Plaintiff cannot establish that Nahavandi denied, delayed, or interfered with medical treatment. Estelle, 429 U.S. at 106. Accordingly, amendment would be futile and the Court **RECOMMENDS** that Plaintiff's claim against Nahavandi be dismissed.

## V.  Conclusion

For the reasons set forth herein, it is **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Claims against Defendant Afshid Nahavandi be **GRANTED,** and Plaintiff's claim be **DISMISSED.**

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any party may filed written objections with the court and serve a copy on all parties by **March 7, 2012**. The document shall be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **March 21, 2012**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: February 14, 2012

Hon. Mitchell D. Dembin
U.S. Magistrate Judge